Good morning. May it please the court. Philip McGrady on behalf of the appellant Matthew Anthony. The first issue this court must decide concerns whether Officer Lytle unreasonably extended the length of a Terry stop. And I'm just going to cut to the chase and get to the fact that my client Matthew Anthony used his friend's name, Ty Scarta, whose car he was driving when the stop occurred. There's absolutely no doubt that Matthew Anthony did use Ty Scarta's name. That's not the issue. It's just one factor the court must consider. The issue is whether Matt Anthony's Fourth Amendment rights were violated. One thing this court knows is that the majority of the suppression hearings that comes before this court involve defendants who either pled guilty after having a suppression motion denied or went to trial and were found guilty. In the words of Thurgood Marshall, I'm quoting here, because the strongest advocates of Fourth Amendment rights are frequently criminals, it is easy to forget that our interpretations of such things apply to the innocent and guilty alike. The point of that, I believe, is that the Constitution will sometimes require that society's interest in being protected and society's interest in punishing crimes will sometimes have to take a back seat to a person's constitutional rights. So Matt Anthony's using Ty Scarta's name is just one factor for the court to consider in determining whether the length of this stop was unreasonably extended. If we accept as true the officer's testimony that he smelled marijuana, if we accept that fact as true, then does your analysis change? It does change somewhat, Your Honor. Why was the stop unreasonably long if the officer, again, I know you dispute this, but the officer smelled marijuana in the car? Well, like you indicated, I do dispute that. First of all, he testified that they were free to leave. Just take that as a given, though, because we understand your dispute of the evidence. But if we accept that as true, then where does that leave you? Taking that as true, if the officer truly smelled burnt marijuana, then he could have held them on the side of the road. I think that changes the analysis. But as I said, I still dispute that because of the testimony that they were free to leave at 321. And had Officer Lytle truly smelled burnt marijuana when he first approached the car at 305, why did he wait for 30 minutes to request a drug dog? He could have easily requested the drug dog when he took Matthew Anthony back to his car, which was at 307 approximately. So he had every opportunity to contact, dispatch, and request the drug dog. So smelling burnt marijuana, I think, is undermined. His allegation that he smelled burnt marijuana is undermined by his testimony at the suppression hearing, as well as his conduct on the side of the road there near Miles City. Well, what caused him to call for the drug dog? Apparently it was the discrepancy in the stories. Now, how soon did he get the story from the passenger, which didn't jibe with the story from the driver? Was that after he'd written the warning ticket? It was after he wrote the warning ticket. He wrote the warning ticket at approximately 321. He took Matt Anthony back to a second officer's car a couple minutes after that, went out, got Josh Ritter, brought Josh Ritter back to his car, and asked him some questions in the car. And one of the questions he asked him was whether he asked Josh Ritter, will you consent to a search? And Josh Ritter said no. And Officer Lytle's response to that was, well, I have other options. And that's the point when he called dispatch and requested the drug dog, after Josh Ritter had refused to consent to a search. And as soon as Officer Lytle asked Josh Ritter if he would consent, he went back to the second car and asked Matt Anthony if he would consent to a search. And Matt Anthony said no. And Officer Lytle later used that against both of them when he called dispatch and said, the problem here, when he was talking to Warren Boots, the problem here is your partners don't want to consent to a search. Now, you all know that invoking your constitutional right to refuse to consent to a search cannot be used as any part of a basis for reasonable suspicion. But all the facts, the totality of the facts here indicate that Officer Lytle did, in fact, use that as part of the reason for requesting the drug dog. When he first called for the dog, he didn't say that he'd smelled marijuana. Is that correct? That's correct. He did not say that. He just requested the drug dog, and that was at roughly 333. And then at 345, after he's questioned all three of them, he then gets back on the phone with dispatch and says, hey, where's the drug dog that I requested? And when you listen to the CD recording, the audio recording, which is part of the record, it indicates that he was prompted for that from the dispatch. And maybe a distinction here, in Montana, you've got to have a basis for requesting a drug dog. I understand under federal law, Illinois v. Cabalas, I believe, I'm probably butchering the pronunciation of that, but if the drug dog is requested simultaneous with a Terry stock, then there's nothing illegal about that. As long as the drug dog is there simultaneously with the officer investigating the purpose for the stock, then there's no violation of constitutional rights. So the dispatch possibly, I don't know, but possibly said, hey, do you have a reason for requesting the drug dog? And that's the first point that he mentions to dispatch, I smelled marijuana when I first approached the car. He did earlier at around 3.30 approximately, when he went back to Matt Anthony's, who was in Officer Martin's car, the other car, after Matt Anthony refused to consent to the search, he said, hey, well, the reason is, well, I think the way the conversation went was Officer Lytle said, can I have your consent to search the car? And Matt Anthony said, not if you don't have a reason to. And then that's when Officer Lytle says, well, I smelled burnt marijuana when I first approached the car. So he had every opportunity from 3.05 to 3.30 to go ahead and request a drug dog, and I think that's part of the problem here is that he didn't diligently pursue his own hunches. If he truly had a hunch of smelling burnt marijuana, then he should have pursued that immediately. Perhaps, but does it make the stop unconstitutional? I mean, an officer may want to be careful and not reveal his or her suspicions until later in the search, too. And I think the case law suggests that, I mean, you've got to look at the timing of it, and there are cases, U.S. v. Chamberlain, I believe there was a 20-minute detention, and they said it was unconstitutional because of the length of the stop. And here the Terry stop ended at 3.21 by Officer Lytle's testimony at the suppression hearing. That's when he issued the warning card, and he said they were free to go. So from that point... He didn't say to the participants that they were free to go, apparently. He never told them they were free to go. They eventually, about an hour and 40 minutes after the stop was initiated, they drove them to Miles City and left them in the parking lot of an Albertson's shopping center. What was the total time of elapsed time from the stop till they took them to Miles City? 3.05 was when the stop was initiated, and I believe 4.46 was at the time they drove them to Miles City. So roughly an hour and 40 minutes from the time that the stop was initiated until the time they left the scene where the stop had occurred. And the second issue that I've raised... Well, one other point on the collective knowledge. The government has argued that they're entitled to rely on the collective knowledge of law enforcement, which would mean that Officer Lytle could use information that he learned the day after the stop. And I don't think that's the state of the law. I don't think you get to build your case through this kind of hindsight analysis afterwards. You're limited to the facts known to you at the time the stop is occurring. When does this collective knowledge come in, and what types of cases? The cases that were cited by the government, and I forget the name of the case, but it was an Arizona case, and there was multiple... It was at the border, and there were immigration customs officials. There was an airplane. There was some other officers in cars on the ground, and they were all in communication about what was happening with this guy who was flying a plane, and they overheard some of the radio communication with this guy who said, no go, no go, we've got to back out. And ultimately, the court said they could use this collective knowledge known by the officers who were... Basically, it means all the officers who were pursuing the investigation at the same time. Here, it should not apply. I mean, following the government's logic would mean that Officer Lytle can go back to the station house. He can detain somebody on the side of the road for 20, 30 minutes, an hour and a half, and search them, have a drug dog come out and do a drug sniff, and then go back to the station house and find out facts about them, and then incorporate that into the basis for extending the stop, and I don't think that's the state of the law. Thank you, Counsel. I know you had the Fifth Amendment issue, but if Ms. Kollar raised that, you can have some time for rebuttal on that. Ms. Kollar? Thank you, Your Honors. Sheila Kollar for the government. This is a very straightforward case. This case, the objective facts support the particularized suspicion and the probable cause to hold these defendants. These facts include the smell of marijuana when he first approached the vehicle. Let's, for the moment, say that you can't consider that. Okay. What else do you have? What else do we have? After when he first approached the vehicle, three or two out of the three individuals did not have an ID, and he thought that was suspicious. So he asked the driver, which is Mr. Anthony in this case, who are you, and he says his name is Ty Scarda. That is very significant. He did lie about his identification, and he continued to lie about who he was. The reason this was suspicious to the officer is when he was talking to Mr. Anthony and ended up calling in the name Ty Scarda to dispatch, the description came back for Mr. Ty Scarda, a total different description to the individual that's sitting there next to him. At that time, he realizes Scarda, a unique name, that this is possibly the intel that he had received the day before the stop from another trooper, that the intel was the vehicle matching this description with the occupants by the name of Scarda were hauling a load of illegal drugs from Washington State to North Dakota. In additional, there were also the conflicting stories about travel, that they had been to Billings, Montana. When asked one where his ID was, he said, I lost my wallet in Bozeman, which is two hours west of Billings. So there was conflicting story as to travel also. So we had four things, not considering the smell of marijuana, if you say don't consider that. We have the intel, the line of their names, and the line of travel. Is that enough to warrant a drug dog, though? If you leave out the marijuana smell, what justifies in all of that calling for a drug dog? Well, to call a drug dog in federal law, cabela, you have to have the particularized suspicion. And there was enough even without the smell of marijuana. But that isn't the case in this situation, Your Honor. In this case, he smelled marijuana as soon as he approached the vehicle. And the federal law does say that the smell of marijuana is probable cause to bring the drug dog. Now, I think there was some odd testimony about Lytle when he said that they were free to go during the suppression hearing at 321. At the failure of my part, I am a state prosecutor, and I should have mentioned the state law in Montana, which is the smell of marijuana is not enough to call a drug dog. We suspect that the law enforcement officer being trained in state law, that's what he was thinking when he testified to such. However, we do know that in federal law, the smell of marijuana, cherry, and rimose is enough to bring a drug dog. And we also know that a Fourth Amendment violation, state law, is irrelevant to a Fourth Amendment violation. Now, this intel communication was that this was the car, and it had been carrying drugs or was carrying drugs? Yes. Which, had or was? Which was carrying illegal drugs. I want to clarify what the defense counsel said, that this intel, cumulative intel or cumulative information, I want to clarify the record that this information did not come after he got to the station house. He had it on his visor, right? He had it on his visor, and he had it prior to the stop, but he didn't make the connection until he heard the name Skarda. But is the anonymous tip enough? I mean, under our case law, that's probably a little icy as well. Was it a reliable, known informant? It was not, Your Honor. It was an anonymous tip. However, it proved to be true, I mean, that there were drugs in the vehicle. I think the difficulty is, I mean, it comes down to the smell of the marijuana. It doesn't seem like anything else adds up to probable or reasonable cause to detain someone for an hour and 40 minutes. Well, it is the government's position that if you don't have the smell of marijuana, once again, there was credibility found by the district judge that the officer's testimony was credible, and there's greater deference given to such. But we also feel that the lying about their IDs, that obviously the officer knew something was suspicious going on, the intel and the story differences of story of travel, and another thing, you know, driver's license when they were asking about, when he was sitting there giving them the warning card, the defendant, Mr. Anthony, was telling him, well, it may not match my address, it may not be the same. Again, another thing is just this is a competent officer who is thinking, there's something going on here. But again, our position is he did smell marijuana. Any further questions? Okay. Thank you, Ms. Collier. Thank you. We'll give you a minute for rebuttal, Mr. McGrady. I'll just address two things. When Ms. Collier was talking about the description when Officer Lytle called dispatch and got the description to find out Ty Scarda, Matt Anthony, he got that before he issued the warning ticket. So he had the opportunity right there to continue asking questions. Instead, he wrote the warning ticket, and it's our position that the Terry stop ended at that point. On the anonymous tip, Judge Siebel did at trial, did not let that into evidence. So it is important that this was an uncorroborated anonymous tip. And briefly on the second issue that his Fifth Amendment rights were violated, when the Terry stop ended at 321, from that point forward, by Officer Lytle's admission it ended at 321, by that point forward he should have been Mirandized prior to any questioning. The one question that he answered was pretty innocuous and probably was maybe harmless error. And I disagree with that position. Not that I know of. Do you have any drugs? Not that I know of. Not that I know of. He said, do you have any drugs? Not that I know of. He testified at the suppression hearing that the typical response is no instead of not that I know of. And it was introduced at trial and used against him, and the government has taken the position that only that one statement was introduced and it's harmless error. But first of all, Warren Boots got up and testified against Matt Anthony as a result of the denial of the suppression motion, and it was included in the search warrant. So I think it's a little more than harmless error in the one statement. Thank you, Counsel. The case just heard will be submitted for decision. Proceed to the United States Court of Appearance.
judges: Fletcher B. , Tashima, Thomas